**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, et. al., Plaintiffs,**

v.

**John N. DALTON, Governor, et. al., Defendants.**

**Civ. A. No. 81–51–NN.**

United States District Court,
E. D. Virginia,
Newport News Division.

June 4, 1982.

See also, D.C., 544 F.Supp. 282.

C. T. Neale, III, Hudgins & Neale, Newport News, Va., Robert H. Stropp, Jr., Cooper, Mitch & Crawford, Birmingham, Ala., Bruce A. Miller, Roger J. McClow, Miller, Cohen, Martens & Sugerman, P. C., Detroit, Mich., for plaintiffs.

Marshall Coleman, Atty. Gen. of Va., Gregory M. Luce, Asst. Atty. Gen., Richmond, Va., Robert V. Beale, City Atty., Newport News, Va., for defendants.

## MEMORANDUM ORDER

MacKENZIE, Chief Judge.

This is a related action to *United Steelworkers of America v. Dalton*, 293 F.Supp. 282 (*Steelworkers I*), also before this Court. The events complained of arose from a strike at the Newport News Shipbuilding and Dry Dock Company in the winter and early spring of 1979. In *Steelworkers I*, the plaintiffs therein challenged the constitutionality of three Virginia statutes: §§ 40.1–53, 18.2–406 and 18.2–407 of the Virginia Code. They also challenged the actions of various city officials in response to the strike. Generally speaking, plaintiffs complained of unlawful arresting procedures and certain excesses in police conduct.

This complaint was originally proffered as an amendment to the pleadings in *Steelworkers I*. As proffered, the amendment would have added eighteen new plaintiffs and twelve new defendants. The claims of the eighteen plaintiffs all related to excesses in police conduct on the 16th of April. In the interest of keeping the litigation in *Steelworkers I* manageable, the proffered amendment was refused. Subsequently, that amendment became the basis for the complaint in this action.

Although there is not a complete identity of actors in this action and *Steelworkers I*, the actions are so closely related that the rulings of *Steelworkers I* will be largely dispositive in this action. Consequently, where the issues are the same, the Court will simply rely on the rulings of *Steelworkers I*. No good purpose would be served through a recantation of the rationales of *Steelworkers I*.

■ Initially, plaintiffs challenge the facial validity of the same three Virginia statutes challenged in *Steelworkers I*: §§ 40.-1–53, 18.2–406 and 18.2–407 of the Virginia Code. For the reasons stated in *Steelworkers I*, those challenges are rejected.[1] George C. Austin, the City of Newport News Police Chief, and the City of Newport News have moved to dismiss this action on the same grounds they put forth in *Steelworkers I*. For the same reasons stated in *Steelworkers I*, their motions are DENIED.

Defendants Frank Smiley, City Manager of Newport News at the time of the strike, C. E. Hinman, Deputy Police Chief of Newport News, and Marvin B. Farmer, a lieutenant in the Virginia State Troopers, have also moved for dismissal from this action. Plaintiffs' complaint is brought under both

---

1. Apparently, these are the only claims made against defendant Dalton. In ¶ 32 of the Complaint, however, plaintiffs allege that the actions taken on April 16, 1979 by the state troopers named as individual defendants were taken at the direction of and within the scope of authority conferred upon them by defendant Dalton. To the extent this is an attempt to hold defendant Dalton responsible for the state troopers' actions, it must fail. Plaintiffs have alleged no facts to indicate that the specific actions taken by the troopers were at the behest of, or in the presence of, defendant Dalton.

Clearly, defendant Dalton, as governor, had the right to dispatch state troopers to the strike scene in order to see the laws of the Commonwealth respected. Thus, to hold defendant Dalton liable for any transgression committed by one of the state troopers would be to impose liability under a *respondeat superior* theory. Because the Civil Rights Act of 1871 is not a federalization of tort law, *respondeat superior* is not applicable to plaintiffs' claims in this suit. *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).

42 U.S.C. § 1983 and 42 U.S.C. § 1985. The portion of § 1985 applicable here is subsection 3. It provides:

> If two or more persons in any state or territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

These three defendants argue that plaintiffs' complaint states nothing actionable under this section.

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court limited the scope of § 1985(3) to those conspiracies founded on a racial or other class-based animus.

> That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others.... The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring as an element of the cause of action the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

403 U.S. at 101, 91 S.Ct. at 1798.

The questions that must be resolved, then, are whether plaintiffs are complaining of a class-based discrimination, and if so, whether the class is one cognizable under § 1985(3).

■ For class-based discrimination to occur, a class must first exist at whom the discrimination is aimed. The class is not to be defined from the actions of the conspirators; it must preexist the conspiracy and have an existence apart from the conspiracy. Without the existence of a class, there can be no class-based animus. *Askew v. Bloemker*, 548 F.2d 673 (7th Cir. 1976).

■ A class must be defined from the common characteristics shared by its members. *Id.* at 678. For the purposes of § 1985(3), the class must be "possessed of discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex." *Bellamy v. Mason's Stores, Inc.*, 368 F.Supp. 1025, 1028 (E.D.Va.1973) *aff'd*, 508 F.2d 504 (4th Cir. 1974); *Savina v. Gebhart*, 497 F.Supp. 65 (D.Md.1980). Where a group's class status depends entirely upon the actions of which the group complains, the only characteristic the group's members can be said to share is the wrong of which they complain. More importantly, the class cannot have existed prior to the defendant's wrong, for it is the wrong that is claimed as the shared characteristic of the class. In such circumstances, no class exists within the meaning of § 1985(3), nor can the defendants' actions have been based on a class-based animus.

Several courts have considered whether union members constitute a class for the purposes of § 1985(3). These courts have held that union members are not a cognizable class. *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743 (10th Cir. 1980); *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir. 1980); *Iowa Beef Processors, Inc. v. Gorman*, 476 F.Supp. 1382 (N.D.Iowa 1979); *Amalgamated Clothing and Textile Workers Union v. J. P. Stevens and Co., Inc.*, 475 F.Supp. 482 (S.D.N.Y.1979).

■ Applying the criteria set forth in *Bellamy v. Mason Stores, Inc., supra,* this Court agrees that union members, and here the United Steelworkers of America, do not constitute a class within the meaning of § 1985(3). The union members, as a group,

are not "possessed of discrete, insular and immutable characteristics comparable to those characterizing such classes as race, national origin and sex. *Id.* at 1028.

■ Because plaintiffs, as union members, do not constitute a cognizable class, the Court must consider what other characteristic sufficient to confer class status upon them plaintiffs share. The only characteristic plaintiffs share is their status as victims of the conspiracy alleged in the complaint. Because the defendants' actions cannot define a class, no class within the meaning of § 1985(3) exists. As no class exists within the meaning of § 1985(3), plaintiffs' claims under § 1985(3) against defendants Smiley, Hinman, and Farmer are DISMISSED. Insofar as plaintiffs' claims against any of the defendants are based upon § 1985(3), they are DISMISSED *sua sponte.* Because of our resolution of this issue, there is no need for the Court to consider defendants' other defenses to plaintiffs' § 1985(3) claims.

Defendants Smiley and Hinman also have moved to dismiss the complaint for failure to state a claim under 42 U.S.C. § 1983. The allegations against defendant Smiley are that he conspired with other of the defendants "to deprive plaintiffs of rights guaranteed by the Constitution of the United States and federal labor laws. . . . [and participated in] one or more meetings for the purpose of planning strike arrest procedures and evidence handling, relating to strike arrests, directed against the plaintiffs and to be selectively applied against the plaintiffs." Plaintiffs' Complaint ¶ 30. Plaintiffs also allege that Smiley took part in the planning of special bonding procedures. These procedures, plaintiffs aver, had a "chilling" effect on the exercise of their rights. Finally, plaintiffs allege that Smiley directed and was responsible for the various police excesses during the strike, particularly those that occurred on April 16, 1979.

■ Defendant Smiley argues that these assertions are vague and seek to hold him liable under a *respondeat superior* theory. In § 1983 actions, the doctrine of *respondeat superior* is not a proper basis of liability. *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir. 1977). Whether greater particularity would be desirable in plaintiffs' complaint, at this point the complaint is sufficient to state a § 1983 claim against defendant Smiley. Essentially, plaintiffs' claim is that defendant Smiley took part in the planning, and directed the use, of the Newport News police as a tool for harassment of the strikers. As strikers, plaintiffs were harassed. These allegations sufficiently state a claim that defendant Smiley knowingly acted to deprive plaintiffs a right guaranteed under federal law—the right to participate in union activities. With regard to the events of April 16, 1979, if the police actions were undertaken as a part of the harassment plan, defendant Smiley could be responsible for them. Development of the evidence will be necessary before the link, if any, between Smiley and the events of the 16th can be determined. Defendant Smiley's motion to dismiss plaintiffs' claims under § 1983 is DENIED.

■ Defendant Hinman's motion for dismissal must also be denied. The complaint contains two claims against Hinman. First, it is alleged that Hinman directed the filing of false criminal charges against plaintiffs. Plaintiffs' Complaint ¶ 32H. Second, it is alleged that defendant Hinman participated in the unlawful beating of plaintiff George Furge, and caused false charges to be filed against him. These allegations are sufficient to state a claim under § 1983.[2]

Marvin B. Farmer, raising two defenses, also seeks dismissal of plaintiffs' § 1983 claims against him. He first asserts that plaintiffs' claims against him are nothing more than claims of malicious prosecution and that malicious prosecution is not actionable under § 1983. Second, he argues that even if malicious prosecutions are actiona-

---

**2.** These allegations do not implicate Hinman in the general charges of excessive police force. Any liability Hinman may be subject to can arise only from the allegations of these two paragraphs.

ble under § 1983, the claims here are time-barred.

The claims against defendant Farmer are stated in ¶¶ 32K, Q, R, U, W, Y and KK of plaintiffs' complaint. All but the claims of Gary Baker, ¶ 32K, and Robert Lee Bragg, ¶ 32R, contain allegations of the use of excessive force by defendant Farmer, as well as claims of malicious prosecution. Although the claims of excessive force are actionable under § 1983, the malicious prosecution claims must also be addressed.

Citing *Curtis v. Russo & Mastracco, Inc.*, 413 F.Supp. 804 (E.D.Va.1976), defendant Farmer argues that malicious prosecution is not actionable under § 1983. As a general rule, defendant Farmer is correct.

Malicious prosecution cases usually stem from the bringing of criminal charges by one private party against another private party. The only state action is the use of the state courts. In such circumstances, the use of the courts does not transform an essentially private action into state action. The courts have refused to recognize a § 1983 claim in such circumstances. *See, e.g., Curtis v. Russo & Mastracco, Inc., supra.* Malicious prosecution cases also have arisen in situations where a government official has instituted criminal proceedings, the defendant believing the proceedings to be unjustly commenced. In such circumstances, the criminal defendant has sought recovery under § 1983. Although the particulars of the claim may have been a denial of liberty, or equal protection, or due process, the claims reduce to charges of harassment and a denial of general constitutional rights. Courts have rejected these claims, finding nothing to distinguish them from the common law tort of malicious prosecution. *See e.g., Cramer v. Crutchfield*, 496 F.Supp. 949, 953 (E.D.Va.1980); *Hahn v. Sargent*, 388 F.Supp. 445, 452 (D.Mass.), *aff'd*, 523 F.2d 461 (1st Cir. 1975).

■ This case presents special circumstances. First, there is no doubt but that defendant Farmer was acting under color of state law. Second, plaintiffs have alleged that Farmer intentionally caused the filing of false charges against them. Third,

and most importantly, plaintiffs allege that Farmer took these actions for the purpose of denying plaintiffs their right to engage in concerted union activity—a right specifically protected under federal law. Plaintiffs, then, are not simply claiming that defendant Farmer harassed them through the malicious institution of criminal proceedings. More than harassment is alleged; plaintiffs claim Farmer acted for the express purpose of denying them their right to strike. Plaintiffs suffered more than a loss of the right to be free from arbitrary arrest; they allege arbitrary arrest and a loss of the right to strike. Although § 1983 is not meant to establish a federal tort law, it does permit recovery for intentional denials of federal rights. *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Under the facts alleged here, plaintiff has stated a cause of action under § 1983.

Defendant Farmer next argues that even assuming a cause of action is stated here, the claim is time barred. The acts complained of occurred on April 16, 1979. This action was filed on April 2, 1981. Because under Virginia law, actions for malicious prosecution must be brought within one year of the date the prosecution terminated, *Federated Graphics Companies, Inc. v. Napotnik*, 424 F.Supp. 291, 293 (E.D.Va.1976); Va.Code § 8.01–248, Farmer seeks this action's dismissal.

■ In § 1983 actions, statutes of limitations are borrowed from state law. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). Since malicious prosecution actions in Virginia are governed by a one year limitation, at first blush, this action would appear time barred. The Fourth Circuit, however, has recently discussed the special nature of § 1983 actions, and clarified which statute of limitations should be applied.

In *McCausland v. Macon County Board of Education*, 649 F.2d 278 (4th Cir. 1981), the facts plaintiff based his § 1983 action on also could have supported a state contract action. To demonstrate the required consti-

tutional basis for his § 1983 claim, however, the plaintiff had to "allege personal injuries transcending contract rights." *Id.* Because "personal injuries transcending contract rights" were required to state a § 1983 claim, the Court treated the action as one most closely akin to personal injury actions, and applied the personal injury statute of limitations.

We have consistently held, however, that the Reconstruction Civil Rights Acts create causes of action "where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person." *Almond v. Kent*, 459 F.2d 200, 204 (4th Cir. 1972). As a consequence, it is to the state statute of limitations for personal injuries to which we usually look in determining when claims are time barred.

Id. at 279 (citations omitted).

 As has been seen, claims of malicious prosecution generally are not actionable under § 1983. The allegations of plaintiffs' complaint, however, transcend that of the usual malicious prosecution claim. Plaintiffs have claimed that defendant Farmer not only maliciously instituted criminal proceedings against them, but that he did so in order to deny them their right to strike. Thus, following *McCausland*, in this action the Virginia statute of limitations for personal injuries must be applied. This is two years. Va.Code § 8.01–243(A).

Under the two year personal injury statute, there is no question that this action is timely. Defendant Farmer's motion to dismiss those portions of plaintiffs' complaint asserting claims under § 1983 must be dismissed.

Defendants have also sought summary judgment in this action. After reviewing the record, it does not appear that summary judgment would be appropriate at this stage of the proceedings. Further factual development is necessary.

Having reviewed the motions and applicable law, it is therefore held that plaintiffs' challenge to the facial validity of §§ 40.1–53, 18.2–406 and 18.2–407 of the Code of Virginia is DISMISSED. As de-

fendant Dalton is a party defendant only to those challenges, his motion for dismissal is GRANTED. Because, as a matter of law, plaintiffs have suffered no class-based discrimination within the meaning of 42 U.S.C. § 1985(3), any claims plaintiffs make under that section are DISMISSED. Because further factual development is necessary before the Court can determine whether any of the acts and omissions of any of the defendants, other than Dalton, is actionable under 42 U.S.C. § 1983, their motions to dismiss and for summary judgment are DENIED. The matter will proceed.

It is so ORDERED.